MOSES SPEAR *v.* THE TOWN OF LOWELL.

*Highway.*

The fact that a highway surveyor does not immediately proceed in the attempt to render a highway passable and safe for travel, when it has suddenly become impassable and unsafe, is not conclusive upon the question of his negligence. The question is, whether such attempt would be successful if made; and in this respect the statute must receive a reasonable construction; and where it is evident that such attempt would be fruitless, it would be unreasonable to require it to be made. Thus, as bearing upon this question, where the highway upon which the injury was received, and others in the town, were suddenly rendered impassable and unsafe by reason of the thawing of the snow, which commenced on Saturday and continued during the Sabbath, the town up to the time of the thaw being in no fault in not having kept the snow cleared from the roads, it was *held* admissible for the town to show the condition of the roads at the time, and the number of miles of road the town was bound to maintain and keep in repair, and the number of the inhabitants in the town.

*Held*, also, there being no such conflict in the testimony as to entitle the plaintiff to go to the jury upon the question, that it was not error for the court to rule as matter of law, that neither the officers nor the inhabitants of the town, were bound to bestow labor upon the highway in question on the Sabbath.

CASE for damage on a highway. Plea, the general issue, and trial by jury, December term, 1872, PECK, J., presiding.

The plaintiff gave evidence tending to prove, that on the 29th of March, 1869, he was passing over a highway in the town of Lowell, in a sleigh drawn by one horse, when, by reason of the deep snows that had fallen and been suffered to remain in the highway, and by reason of the drifts of snow which had filled the road, and been suffered to remain without being shoveled out or otherwise removed, and by reason of a thaw which had commenced on the 27th of said March, whereby the snow in said highway had become soft, the horse of the plaintiff broke in, and slumped in the snow and snow-drifts, to such an extent that it was unable to proceed, or extricate itself from the snow and snow-drifts, and thereby became injured and wounded in its legs, and the plaintiff by reason of his exertions and exposure in attempting to extricate the horse, became greatly injured in his person and health ; that the average depth of snow in the part of the town where this road was situated, was, upon the level, from four

to five feet, for the distance of four or five miles, and that that was about the average depth of snow in the town, and that it was nearly that depth all that distance, in the travelled road, and that at the point where the horse received its injury, the snow had drifted into the road so that it was from four and a half to five feet deep where the travel went; and that during all that winter up to the time of the accident, the snow had not been shovoled out, and in no way removed, or attempted to be removed, from the road, except by passing over it after a storm, with a sled, with a plow attached to the sides of the sled, thus throwing snow out of the travelled track, and that it had been so plowed out from one to three times a week during the snow season, as the defendant's evidence tended to show. The plaintiff's testimony showed that it was not new or loose snow that rendered the road unfit for travel; that he went from Orange county, where he resided, and passed over this road on the Saturday before the accident, and the road was then safe for travel, and a good track for travel beaten, except the thaw had so far softened the snow in the road-bed, that in one place, for a short distance, his horse slumped into the snow track, but not to much extent, and that but for the effect of the thaw, the road would have been in safe condition for travel at the time in question; that the 27th of March was Saturday, and on Sunday, the following day, the thaw increased still more, and the plaintiff was desirous of proceeding on his journey home, which fact was known to some of the people of Lowell; that he stayed over the day on Sunday, on account of the bad condition of the roads, and about one o'clock in the morning of Monday, the weather having grown colder, and the snow having to some extent become frozen, he started, and had proceeded about three miles, when he met with the injury complained of.

The defendant introduced testimony tending to prove, that there was an unusual depth of snow generally, in that region that winter, and that it would have been oppressive, impracticable, and unreasonable for the town to have been compelled to keep its roads cleared from snow, so that it would not have obstructed the travel in case of a great and rapid thaw, like the one in question; and

in this connection, among other things, the defendant offered to show the number of miles of road in the town, and the number of people in the town, and the amount of the grand list of the town that year, for the purpose of showing its pecuniary inability to keep its roads unobstructed by snow, and that the town had used due diligence in that respect, according to its property and pecuniary ability, and the number of the inhabitants, and the great extent of highways it had to support. To this evidence the plaintiff objected, and the court excluded the same, remarking that the statute, in terms, provided that towns shall keep their highways in good and sufficient repair at all seasons of the year, and that the duty and liability of a town under this statute, could not be made to depend on the pecuniary ability of the town, and could not be evaded by proof of this kind, but that there might be cases where, notwithstanding the absolute and unqualified language of the statute, by some sudden action of the elements, the highways throughout the town, although up to that time kept in good and sufficient repair, might be rendered unsafe for travel, and rendered so temporarily, by a cause which the town could not control, and for which it would not be responsible ; and in a season of great depth of snow, generally, throughout the town and region, sudden softening by a great and rapid thaw, might make a case of this kind ; that towns were not bound to perform impossibilities, or do what was impracticable, but that it was the duty of the town to have kept its roads so broken out and cleared through the winter and spring, as not only to keep them in good and sufficient repair and reasonably safe for travel during the winter and freezing weather, but in doing so, to do it in such a manner as to reasonably guard against the effects of a rapid and sudden thaw, in softening the snow, and thereby rendering the roads dangerous or unsafe for travel, and that, if it was by the neglect of this duty on the part of the town that the thaw rendered the roads unsafe for travel, the town would not be excused from liability upon the ground that the thaw was so rapid and extensive that it was impracticable after it commenced, to have prevented its rendering the roads unsafe for travel, or for the town to have restored the

roads to safe condition for travel; and the court stated to counsel that the court should so charge, and the court, among other things, did so charge the jury.

The defendant introduced evidence tending to show, that the town had, through the winter and spring, kept its roads plowed out, and the snow properly removed therefrom, and had done its duty in that respect, and that the rapid and sudden thaw that commenced on said Saturday, and continued through the day on Sunday, so softened the snow as to render the roads throughout the town, and the road in question, unsafe for travel to such an extent that it was impracticable to prevent that condition of the roads, or to have remedied it, or restored them to a reasonably safe condition for travel.

The evidence showed that the plaintiff remained at Lowell village, at the hotel, on Saturday night, and through the day Sunday, and until about one o'clock Monday morning, when he started for home over the road in question; that he attempted to start sometime during the day Sunday, and was advised by some of the citizens of Lowell, that on account of the thaw, the road was so bad he could not get along, and that he had better not start till the weather changed to freezing, and that he did stay till about one o'clock Monday morning, sitting up, watching to see if the snow would freeze so he could travel; that on Sunday evening the weather grew some cooler, so that at eleven o'clock, the thermometer was six degrees below freezing, but at that time stopped falling, and went no lower, up to the time, at least, when the plaintiff started for home. The evidence on the part of the plaintiff also tended to show, that the snow was a little frozen when he started, and that he was advised by the innkeeper that he thought he could go if he could get over a flat piece of ground not far from the village where he was.

The evidence on the part of the defendant also tended to show, that the plaintiff was not so advised, but that he was advised just before he started, by a citizen of Lowell, that he could not get along and that he better not start; and that the snow was not frozen when the plaintiff started, although a little stiffened.

As bearing upon the question whether it was impracticable for

the town, after the thaw commenced, to have kept its roads from being thus rendered impassable by reason of the thaw, the defendant offered to show the number of miles of road in town which the town had to support, and the number of inhabitants in the town, at the time in question,—to which the plaintiff objected, but the court admitted the same ; to which the plaintiff excepted. Witnesses then testified that the population was about 900, and the town had about 70 miles of highway to maintain and keep in repair.

The defendant's counsel requested the court to charge the jury, that the town officers or its inhabitants were not bound to work repairing the road on that Sabbath, because it was the Sabbath. In reference to this, the court told the jury that there might be occasions of a highway being out of repair and in a dangerous condition, when it would be the duty of the town officers or citizens to repair it on the Sabbath, as a work of necessity, but that it would depend on the circumstances of the case ; that as applicable to this case, under the circumstances disclosed, the court thought that the officers or inhabitants were not bound to have turned out to repair the road on that Sabbath ; to this the plaintiff excepted.

The defendant introduced evidence tending to show, that the road in question was in good and sufficient repair, and in safe condition for travel, up to and at the commencement of the thaw, and until the thaw had rendered it otherwise. The defendant did not claim that the highway at the time was in such condition as to be safe for travelling, but admitted that it was not, but claimed that the town was not liable to damage, in consequence of the great depth of snow and the sudden thaw which softened the snow and made the roads impassable.

The plaintiff presented to the court several written requests to charge the jury, and by the second request the court was requested to charge and instruct them as follows : " That the snow having been suffered to accumulate, so that a sudden thaw would render it impassable, and so that the accumulation of snow would and did obstruct the travel, it was the duty of the highway surveyor, or of those in whose immediate care this road was placed, to *forth-*

*with* cause the obstructions to be removed; and that the delay which the evidence shows, was unjustifiable—that the force of the district should have been put upon the road *forthwith*, when the thaw began, and the impassable condition of the road was imminent, threatening, and impending." The court refused to so charge; to which the plaintiff excepted. Verdict for the defendant.

*Wm. & S. B. Hebard*, for the plaintiff.

The defendant admitted that the road was insufficient and out of repair, but claimed to be exonerated from the consequences and liabilities of such insufficiency, by reason of its *inability* to keep it in repair. " All highways and bridges within the bounds of any town, shall be kept in good and sufficient repair, at the expense of such town, at all seasons of the year." Gen. Sts. ch. 25, §1. This duty is unqualified and unlimited; and nothing appears in this case which should make it an exception. It was the duty of the town, or of the highway surveyor, to proceed immediately, as soon as practicable, to remove the obstructions from the road with the force and means at its or his control and immediate command. *Clark* v. *Corinth*, 41 Vt. 449.

This town was in fault in suffering the snow to accumulate in the highway to the depth of five feet. From the case, it appears that the snow in the road was nearly as deep as at the sides of the road. This constitutes an insufficiency in the road, and one for which the town is liable. *Green* v. *Danby*, 12 Vt. 338.

The court erred in not instructing the jury upon this point. Upon this request, the court gave no instruction, but simply declined to charge as requested. Is there any doubt that " it was the duty of the highway surveyor to forthwith cause the obstructions to be removed ?" Cases *supra*. But at any rate, we were entitled to some instructions on that point.

The court gave the jury no instructions in relation to the duty of the town in keeping this road unobstructed through the winter, and in this there was error. We claim that it was the duty of the town to have prevented the snow from accumulating to the depth of five feet on this road, and that the court should so have instructed the jury.

88

The court erred in allowing the defendant to show the number
of miles of roads in town, and the number of inhabitants, as
bearing upon the question of the town's ability to keep its roads
in repair. This showing was admitted under objection, and suf-
fered to go to the jury without any instructions from the court ;
and what view the jury took of it, we have no means of knowing.
The defendant had before this offered the same testimony, and
the court excluded it. The doctrine then laid down by the court,
we submit, is the true doctrine, and the court erred in admitting
the same testimony afterwards. It is not denied that there may
be cases when a town, within a given time, could be required to
remove obstructions. But there is no case when a town would
be excused till it had attempted to remove the obstructions, after
being notified. *Clark* v. *Corinth, supra.*

The defendant claimed, and requested the court to charge, that
towns are not bound to repair their roads on the Sabbath. How
far towns will be held to be bound to work on the Sabbath in
repairing their roads, may, to some extent, depend upon circum-
stances. But that there are such cases the court told the jury.
Was this one of those cases? We claim that it was. But
whether it was or not, was a question of fact, and not a question
of law, and one that should have been submitted to the jury.
But we submit that as matter of law, the court should have told
the jury that the statute was imperative upon towns, and made it
their duty whenever their roads became impassable, to turn out
without delay, and put them in a safe condition.

*Orin Gambell, Jr.,* and *Benton, Hill, & Cross,* for the
defendant.

The first exception in this case relates to the admission of the
testimony showing the number of inhabitants and the extent of
the highways in the town. This was not admitted upon the ques-
tion of the measure of sufficiency required by the statute in the
general maintenance of highways. On this point, the evidence
was excluded. The evidence of amount of grand list was wholly ·
excluded. In that exclusion, and the charge on that point, the
court fully held that the ability of the town was no measure of

the sufficiency or goodness of its roads, as required by statute. On this the court did all the plaintiff had a right to ask, even under the rule laid down in *Winship* v. *Enfield*, 42 N. H. 197. The evidence was admitted as bearing upon the duty of the town, under the emergency of the thaw. Under the charge as detailed, the jury have found that in the general maintenance of the road during the winter, and down to the commencement of the thaw, the town was guilty of no fault—that the road was in " good and sufficient repair" with reference both to the safety of travel at the time, and such softening of the snow as might be expected from a rapid and sudden thaw. This was all found independently of the testimony in question. There the question arose as to the duty of the town in the sudden emergency of the thaw. In such case, the law does not demand the instant reparation of the injury ; but only the exercise of due diligence. *Briggs* v. *Guilford*, 8 Vt. 264 ; *Ozier* v. *Hinesburgh*, 44 Vt. 220 ; *Ward* v. *Jefferson*, 24 Wis. 342.

What is reasonable diligence, depends on the peculiar circumstances of each case. Among the elements to be considered, are the amount of damage occasioned in the emergency, and the ability of the town to repair it. *Briggs* v. *Guilford, supra.* These are precisely the points covered by the testimony in question. The test was, whether, by the exercise of reasonable diligence, the town could, within the time, remove the insufficiency occasioned by that thaw. Towns are not bound to perform impossibilities. *Prindle* v. *Fletcher*, 39 Vt. 255.

The second exception is to the charge that, under the circumstances, the town was not bound to repair the road in question on Sunday. The statute forbids work on that day, except works of necessity ; and the question here is, whether the repair of that road was such a work of necessity as to come within that exception. What the statute really means by a work of necessity is, such work as is necessary to prevent irreparable injury or destruction of property.

This case is not at all one of that kind in which any mischief could arise from the delay, other than the ordinary hindrance of travel. *Lyon* v. *Strong*, 6 Vt. 214 ; *Smith* v. *Watson*, 14 Vt.

332; *Lovejoy* v. *Whipple*, 18 Vt. 379; *Adams* v. *Gay*, 19 Vt. 358. The plaintiff's request was for the court to direct the jury as to matters in which they were the judge. There is no fixed rule of law that determines when and how a town is bound to go to work to repair a highway. These are matters of fact, and are the very questions of experience and practice that belong exclusively to the jury.

The opinion of the court was delivered by

Royce, J.   No exception was taken to the charge of the court, and under the charge, the jury must have found that down to the time of the commencement of the thaw on the 27th of March, the town had discharged its entire duty in reference to this highway.   The exceptions taken were to the rulings of the court upon questions relating to the duty of the town after the thaw had commenced.   No question seems to have been made but that the highway in question was unsafe for public travel at the time of the happening of the accident to the plaintiff; and the liability of the town for the consequences of the accident, must depend upon whether the town was negligent in permitting the highway to remain in that unsafe condition.   The duty of highway surveyors, as defined in ch. 25 of the Gen. Sts., has frequently been the subject of judicial examination; and in *Clark* v. *Corinth*, 41 Vt. 449, the court held, that whether the surveyor was in fault or not, depended upon the question whether, by diligently using the means at his command or within his reach, he could have put a force immediately upon the road which was competent to make the necessary repairs after the injury to the road and before the accident happened; so that the fact that the surveyor does not immediately proceed in the attempt to make a highway passable and safe for travel over it, is not conclusive upon the question of his negligence.   The question is, whether such attempt could be successful if made.   There may be cases, and from the evidence as detailed this was probably one, where the surveyor would not be required to make an immediate attempt to make the highway safe for travel.   The statute must receive a reasonable construction; and where it is evident that any such

attempt would be fruitless, it would be unreasonable to require it to be made ; and as bearing upon the question of the duty of the surveyor, we think it was competent to show the condition of the highway in question, and the nature and extent of the work required to be done upon it; and as explanatory of the means at his command, or within his reach, it was permissible to show the number of miles of road, and their condition, which the town was required to maintain, and the population of the town. We perceive no error in the ruling of the court upon the question of the obligation of the officers or inhabitants of the town to have turned out and repaired this road on the Sabbath. There was no such conflict in the evidence as entitled the party to the judgment of the jury : and it was competent for the court, as the question was presented, to rule upon it as a question of law ; and it may well be questioned whether, under our statute enforcing the observance of the Sabbath, towns would ever be justified in bestowing labor upon their highways on that day, to merely facilitate travel over them. It would seem that such labor only became a necessity when necessary to avoid impending danger to life or property. For reasons already given, the plaintiff was not entitled to the charge asked for in his second request. Neither can we notice the objection made in argument, that the court neglected to charge upon the subject-matter of this request; because, if there was such neglect, no exception appears to have been taken to it; and if we were to make any presumption, it would be that the court gave such instructions to the jury upon the subject as the case required.

Judgment affirmed.